**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHER DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **WILLIAM FRANCIS CAMPBELL** | § | |
| **Plaintiff,** | § | |
| | § | |
| **VS.** | § | **CASE NO. 3:13-cv-02192-D** |
| | § | |
| **ZAYO GROUP, LLC,** | § | |
| **Defendant.** | § | |

---

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,

Hal K. Gillespie
Attorney-in-Charge
State Bar No. 07925500
**GILLESPIE SANFORD LLP**
4925 Greenville Ave., Suite 200
Dallas, Texas 75206
Phone: (214) 800-5111
Fax: (214) 838-0001
hkg@gillespiesanford.com


/s/ Walt D. Roper
Walt D. Roper
State Bar No. 00786208
**THE ROPER FIRM, P.C.**
3001 Knox Street
Dallas,Texas 75205
State Bar No. 00786208
Phone: (214) 420-4520
Fax: (214) 856-8480
walt@roperfirm.com


**ATTORNEYS FOR PLAINTIFF**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... iii

I.   SUMMARY OF PLAINTIFF'S ARGUMENTS ................................................ 1

II.  STATEMENT OF FACTS ................................................................................. 2

    A.   Mr. Campbell is Hired by AboveNet as its Sales Manager for North Texas ................... 2

    B.   Zayo Acquired AboveNet; Zayo Retained Campbell and Placed Him as Director of Texas Sales ..................................................................................................... 2

    C.   The Structure of the Zayo Sales Organization ................................................ 3

    D.   Lawrence Vega is Hired as Account Director .................................................. 4

    E.   Williams Initiates the Effort to Terminate Campbell ....................................... 4

    F.   Zayo Consciously and Inexplicably Fails to Follow Its Own Reduction-In-Force Process in Terminating Campbell ..................................................................................... 5

    G.   Vega Was Not Qualified for the Sales Director Position ................................. 8

    H.   Campbell Was Clearly More Qualified Than Vega ...................................... 10

    I.   Zayo's Misrepresentations To and About the EEOC ..................................... 10

      1.   Zayo Made Material Misrepresentations to the EEOC ................................. 11

      2.   The EEOC Did Not Issue a No Cause Finding In Response To Campbell's Charge .... 11

III.  ARGUMENTS AND AUTHORITIES ........................................................... 12

    A.   Summary Judgment Is Improper Where, Viewing the Evidence and Taking Inferences In Campbell's Favor, Material Factual Disputes Remain ................ 12

    B.   Campbell's Age Discrimination Claim Is Meritorious ................................. 13

1.  The Legal Framework For Analyzing Campbell's Age Discrimination Claim ........... 13

2.  Campbell Establishes a *Prima Facie* Case of Age Discrimination Under *McDonnell Douglas* ................................................................................................................... 15

   a.  The Fact that Zayo Replaced Campbell as Sales Director with the Substantially Younger Vega Satisfies the Fourth Prong of a *Prima Facie* Case of Age Discrimination under *McDonnell Douglas* .............................................................. 16

   b.  Because Campbell Has Shown that He Was Replaced by Someone Substantially Younger, He Need Not Show that He Was "Otherwise Discharged Because of His Age" to Establish a *Prima Facie* Case ............................................................. 18

3.  Alternatively, Campbell Easily Meets the Low *Prima Facie* Burden Under the *Williams* Test Applicable to RIF Cases ......................................................... 19

4.  Zayo's Invocation of the RIF Was Merely a Pretext for Age Discrimination ............... 20

5.  Other Evidence of Age Discrimination ......................................................... 23

6.  Zayo is Not Entitled to a "Same Actor" Inference ......................................... 24

IV.  CONCLUSION ................................................................................. 25

TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Texas Rangers,* 492 F.3d 605 (5th Cir. 2007) .......................................................... 15

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ........................................................ 12, 13

*Bauer v. Albermarle Corp.*, 169 F.3d 962 (5th Cir. 1999) .................................................... 14, 21

*Boehms v. Crowell,* 139 F.3d 452 (5th Cir. 1998) ........................................................ 21

*Brewer v. Cedar Lake Lodge, Inc.,* 243 Fed.Appx. 980 (6th Cir. 2007) ...................................... 23

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...................................................... 12

*Riordan v. Kempiners*, 831 F.2d 690 (7th Cir. 1987) .................................................... 21

*Desert Palace Inc. v. Costa,* 539 U.S. 90 (2003).................................................... 14

*Dulin v. Dover Elevator Co.*, 139 F.3d 898 (5th Cir.,1998 (unpublished) .................................. 18

*Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133 (Tex. Ct. App.—Ft. Worth 2000, *no*

*pet.*) .................................................................................................. 20

*Faruki v. Parson S.I.P., Inc.*,123 F.3d 315 (5th Cir. 1997) ......................................... 19

*Findeisen v. North East Indep. Sch. Dist.*, 749 F. 2d 234 (5th Cir. 1984)................................ 12

*Foster v. Regis Trade Secret*, 2008 WL 731962 (N.D. Tex. Mar. 19, 2008) ....................... 12, 13

*Furnco. Const. Co. v. Waters*, 438 U.S. 567 (1978)............................................... 14, 19

*Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009) ............. 15

*Guthrie v. J.C. Penny Co., Inc.*, 803 F.2d 202 (5th Cir. 1986) ..................................... 24

*Hall v. Smurfit-Stone Container Enter., Inc.*, 2008 WL 3823252, *2 (N.D. Tex. Aug. 14, 2008).

.................................................................................................. 12

*Horak v. Glazer's Wholesale Drug Co.*, 2006 WL 20170 (N.D. Tx. July 19, 2006) ....... 17, 18, 19

*Howard v. UPS, Inc.*, 447 F.App'x 626 (5th Cir. 2011)............................................... 18

*Kean v. Jack Henry & Associates, Inc.*, 2013 WL 2983504 (N.D.Tx. June 17, 2013) ............... 18

*Koettner v. Northrop Grumman Commercial Info. Services, Inc.*, 2005 WL 781708, *3

   (N.D. Tex. Apr. 6, 2005).................................................................................................... 19

*Leal v. McHugh*, 731 F.3d 405 (5th Cir. 2013).................................................................. 15

*Machinchick v. PB Power, Inc.*, 398 F.3d 345 (5th Cir. 2005); .................................................. 24

*Machinchick*, 398 F.3d at 353-54 (5th Cir. 2005).................................................................. 19

*McCorstin v. United States Steel Corp.,* 621 F.2d 749 (5th Cir.1980) ........................................ 14

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

   .................................................................................................................... 14, 15, 19

*Meinecke v. H & R Block of Houston*, 66 F.3d 77 (5th Cir. 1995) ............................................. 19

*Miller v. Raytheon Co.*, 716 F.3d 138 (5th Cir. 2013)............................................... 15, 20, 21, 24

*Miller v. Raytheon Co.,* 3:09-cv-0040-O, slip. op. (N.D. Tex. May 13, 2011) ........................... 24

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629 (Tex. 2012) ................................. 14

*Palasota v. Haggar Clothing Co.*, 342 F.3d 569 (5th 2003) ........................................................ 21

*Patrick v. Ridge,* 394 F.3d 311 (5th Cir. 2004).................................................................... 15

*Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000)............................... 13, 20, 21

*Riordan v. Kempiners*, 831 F.2d 690 (7th Cir. 1987) .................................................................. 21

*St. Mary's Honor Center v. Hicks*, 509 U.S.  502 (1993)................................................. 14, 20, 23

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)...................................................... 14

*Thompson v. Origin Tech. in Bus., Inc.*, 2001 WL 1018748, (N.D. Tex. Aug. 20, 2001)...... 19, 25

*Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633 (5th Cir. 1985) ............ 14, 15, 19, 20

*Uffelman v. Lonestar Steel Co.*, 863 F.2d 404 (5th 1989) ..................................................... 19, 24

*Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir.1981)........................................... 14, 15

*Woodhouse v. Magnolia Hospital*, 92 F.3d 248 (5th Cir. 1996)............................................. 19, 24

**Statutes**

530 U.S. 133 (2000)................................................................................................................. 13

Fed. R. Civ. P. 56(c)................................................................................................................. 12

**PLAINTIFF'S BRIEF IN SUPPORT OF HIS RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE U.S. DISTRICT JUDGE SIDNEY FITZWATER:

Multiple genuine issues of material fact remain as to whether Zayo Group, LLC ("Zayo") terminated Plaintiff William Campbell ("Campbell") because of his age in violation of the ADEA. Given the depth and breadth of factual dispute, the Court should deny summary judgment and allow this case to proceed to trial before a jury.

## I.    SUMMARY OF PLAINTIFF'S ARGUMENTS

This is a case about the unjustified and age-discriminatory termination of a 63 year-old employee and Zayo's attempts to launder its discriminatory decision through its so-called "Reduction in Force Process." Claiming to utilize an objective RIF process, Zayo instead favored a younger employee by subjectively re-categorizing him as Campbell's functional peer in its Texas sales force to permit it to claim that it was making an objective choice between two "incumbents" in the same position based on seniority. Zayo's subterfuge is exposed by its own internal emails and the testimony of its President of Sales.

Zayo characterizes its RIF Process as a legitimate, non-discriminatory reason for terminating Campbell, but this reason is exposed as mere pretext through the facts that (1) it was not Campbell's position that was actually eliminated; (2) the employee that Zayo chose over Campbell was not Campbell's peer; (3) there were, in fact, minimum job requirements for the Sales Director role that rendered Campbell's replacement unqualified to hold that position; (4) in the email requesting the termination, Campbell's supervisor utilized a performance-based comparison of Campbell despite disclaiming that the decision was "performance-based"; and, (5)

the 21-day difference in seniority between Campbell and his replacement was *de minimus* and of dubious importance in light of the other differences between Campbell and his replacement.

Taken as a whole, and viewed in the light most favorable to Campbell, the evidence is more than ample to make out a *prima facie* case of age discrimination. Further, Campbell's substantial evidence of pretext and other age discrimination evidence satisfies the ADEA. The existence of genuinely disputed material facts renders summary judgment improper. Zayo is not entitled to judgment as a matter of law and its motion should be denied.

## II.   STATEMENT OF FACTS

### A.   Mr. Campbell is Hired by AboveNet as its Sales Manager for North Texas

On April 2, 2012 AboveNet hired Campbell as its Sales Manager for North Texas.[1] Notably, he was not merely "<u>a</u> Sales Manager for North Texas," as he is described by Zayo in its Motion for Summary Judgment.[2] Rather, AboveNet hired Campbell as its sole Sales Manager for North Texas. In this position, he was responsible for getting to know the customers; counselling, mentoring and supporting the salespersons in the North Texas region who worked in his organization; and for "celebrat[ing] their successes," "work[ing] with them to resolve any difficulties they might have in selling," and "develop[ing] an overall business strategy for the North Texas region."[3]

### B.   Zayo Acquired AboveNet; Zayo Retained Campbell and Placed Him as Director of Texas Sales

On July 2, 2012, Zayo acquired AboveNet.[4] Zayo retained Campbell and gave him the title

---

[1] Exhibit A, Excerpts from the Deposition of William Frances Campbell ("Campbell"), 23:4-10 (App. 000009)
[2] Defendant Zayo Group, LLC's Brief in Support of Its Motion for Summary Judgment (Doc.31), p. 3 ("MSJ Brief") (emphasis supplied)
[3] Ex. A, Campbell, 23:11 – 24:8 (App. 000009)
[4] Ex. A, Campbell, 11:9-12 (App. 000007); Exhibit B, Excerpt from the Deposition of Steven Ray Williams ("Williams"), 44:23-45:2 (App. 000033-000034); Declaration of Sandi Mays (Doc. 32-9) ("Mays Decl.") at ¶ 6, (Defendant's App. 215).

of Director of Texas Sales.[5]  Zayo expanded Campbell's managerial duties to include the entire

state of Texas.[6]  Campbell's substantive duties in his expanded role as Director of Texas Sales

were essentially the same as they had been at AboveNet.[7]   Campbell initially reported to Chris

Murphy, Senior Vice President of Sales.[8]  However, on January 2, 2013 Campbell was informed

that he would report to Steven Williams ("Williams"), Senior Vice-President.[9]  Williams, in turn,

reported to David Howson, President of Sales for Zayo.[10]   In his role as President of Sales,

Howson ultimately approved "the head count associated with hiring" and approved "of any form

of dismissals" within the Sales Channel, including reductions in force decisions.[11]

## C.     The Structure of the Zayo Sales Organization

The Zayo sales organization is a vertically stratified structure.  At the lowest level are the

Account Directors, Account Executives and Senior Account Executives who comprise the sales

force and who neither manage nor supervise any employees.[12]  Conversely, Account Executives

and Senior Account Executives within a region report to a regional sales director, and Bill

Campbell as Sales Director supervised eight employees which included Account Executives,

Senior Account Managers, the Director of Engineering, and Sales Engineers.[13]

---

[5]  Exhibit F, Excerpts from the Deposition of Sandi Mays ("Mays"), 12:10-22 (App. 000080); Ex. A, Campbell, 18:10-22; 29:24-30:4; 43:9-44:1, 114:22-115:2 (App. 000008, 000011, 000013, 000016, 000017)

[6]  Ex. A, Campbell, 24:9-16; 29:17-30:4; 43:9-45:17; 114:22-115:2; 117:6-15 (App. 000009, 000011, 000013, 000014, 000016, 000017, 000018).

[7]  Ex. A, Campbell, 24:1-25, (App. 000009).

[8]  Ex. A , Campbell, 25:1-12 (App. 000010).

[9]  Ex. B, Williams, 58:15-17 (App. 000035).

[10]  Exhibit C, Excerpts from the Deposition of David Howson ("Howson"), 5:23-6:6; 6:13-15 (App. 000040, 000041).

[11]  Ex. C, Howson, 9:1-11 (App. 000042).

[12]  Exhibit D, Excerpts from the Deposition of Lawrence Vega ("Vega"), 55:10-19 (App. 000071); Ex. C, Howson, 22:2-7; 34:12-14 (App. 000043, 000052).

[13]  Ex. D, Vega, 38:10-39:15 (App. 000068 – 000069); Exhibit I, Declaration of William Frances Campbell ("Campbell Decl") at ¶ 20 (App.000105).

### D.  Lawrence Vega is Hired as Account Director

Prior to the AboveNet acquisition, on March 12, 2012, Zayo had hired 41-year old Lawrence Vega as an Account Director.[14]  Unlike Campbell, who had an MBA from Pepperdine, Vega had dropped out of college.[15]  Also unlike Campbell, Vega didn't manage anyone at Zayo.[16]

### E.  Williams Initiates the Effort to Terminate Campbell

On January 9, 2013, after having been in his position as VP of Central Region and Campbell's supervisor for "a matter of days, Williams sent an email to Sandi Mays, Zayo's Chief of Staff, seeking approval to terminate Campbell.[17]  Williams' email stated:

> We are recommending a consolidation of staff in the Dallas, TX market.  We are **eliminating the position that Lawrence Vega currently holds**, Director, Strategic Alliances and recommend **moving Lawrence into the Sales Director** role.
>
> The following employees are the incumbents in these positions:
>
> ▪ William Campbell, Sales Director, hire date: 4-2-12
> ▪ Lawrence Vega, Account Director, hire date: 3-12-12
>
> Based on the following criteria, William Campbell was selected for elimination.
>
> ▪ Seniority:  William Campbell has less seniority with Zayo than Lawrence
> ▪ Qualifications:   Lawrence has equal or superior skills for the role.[18]

This email reveals the true nature of what was actually about to transpire: (1) the "Account Director" position that Vega held was, in fact, the only position Zayo was eliminating, (2) Zayo was terminating Campbell from the Sales Director position; and (3) Zayo was moving Lawrence into a role that Campbell had occupied – that of Sales Director – to take his place.

---

[14] Ex B, Williams, 15:18-16:16; 28:12-23 (App. 000022, 000023, 000028); Ex. D, Vega, 20:1-13, 44:2-6 (App. 000066, 000070); Ex. A, Campbell, 18:23-25. (App. 000008); Mays Decl. at ¶ 14 (Defendant's App. 216).

[15] Ex. A, Campbell, 19:9-17, (App. 000008); Ex. D, Vega, 5:10-6:9, (App. 000064 - 000065).

[16] Ex. D, Vega, 23:18-20, (App. 000067).

[17] Ex B, Williams, 18:11-23; 37:16-19 (App. 000024, 000032).

[18] Ex. B, Williams, 36:16-19, (App. 000031); Ex. C, Howson, 32:20-34:11, (App. 000050 - 000052); Exhibit G, Documents produced by Zayo Group, LLC in its Responses to Plaintiff's Request for Production ("RFP"), (App. 000082 - 000084) (emphasis supplied)

When asked specifically about this email at the outset of his deposition, Zayo President of Sales David Howson – who approved the decision to terminate Campbell[19] – is at pains to tease a different meaning out of it:

Q:  It's your understanding that -- what is your understanding of the position that was eliminated in – in the case of Bill Campbell?

A:  In the case of Bill Campbell, we were combining, through a reorganization, two different roles.  And therefore – and therefore, we were eliminating one of those positions.

Q:  Okay. Which position were you eliminating? Which title were you eliminating?

A:  **I'm not sure.**

Q:  Were you eliminating a sales director, or were you eliminating a strategic – director of Strategic Alliances?

A:  We were combining both of those roles into one future go-forward role.[20]

Howson later agreed in his deposition that it was actually Lawrence Vega's position – not Campbell's – that was being eliminated:

Q:  Is it a correct statement that it was actually the director of Strategic Alliance position that was eliminated, rather than a sales director?

A:  That's what this says.

Q:  Do you agree with that?

A:  I do.[21]

### F.   Zayo Consciously and Inexplicably Fails to Follow Its Own Reduction-In-Force Process in Terminating Campbell

Zayo's "Reduction in Force (RIF) Process" is memorialized in a one page document, which provides:

---

[19] Ex. B, Williams, 26:11-15, (App. 000027); Ex. C, Howson, 25:18-26:2 (App. 000044 – 000045).
[20] Ex. C, Howson, 30:20-31:9, (App. 000048 - 000049) (emphasis supplied).
[21] Ex. C, Howson, 36:6-11, (App. 000054).

Based on the following criteria, an employee's position is selected for elimination. [Select in the following order]

**1.      Only incumbent in eliminated position**

2.      Seniority (less than other incumbents)

3.      Job performance (only if performance is documented and had been communicated to the impacted person)

4.      Qualifications (provide specific qualifications necessary to complete the job that other incumbents have, that others don't)

5.      Geographic mobility (you offered the position to the employee, and they declined to move)[22]

According to Howson, this is the process that he has utilized each time Zayo has acquired another company and a reduction in force is implemented.[23]   Application of the process is supposed to be fairly straightforward:  If the reduction is accomplished by Step 1, then there is no need to move on to Step 2; if Step 2 is dispositive, then there is no need to move on to Step 3, and so forth.[24]

Howson – one of the two people whose job it was to approve Campbell's termination – first testified in his deposition that he "was not sure" which position was being eliminated, and later testified in his deposition that it was, in fact, Vega's Account Director position that was being eliminated.[25]   Howson also admitted that Vega, unlike Campbell, was (1) listed as an account director, not a sales director; (2) was not managing anyone at the time of the RIF; and (3) had not previously managed any persons at Zayo.[26]   Nevertheless, Howson maintained in his deposition that there were two incumbents for the eliminated position, because Vega and

---

[22] Ex. G, RFP, (App. 000085) (emphasis added).
[23] Ex. C, Howson, 28:18-29:10, (App. 000046 - 000047).
[24] Ex. C, Howson, 29:18-30:10, (App. 000047 - 000048).
[25] See text and accompanying footnotes, *infra*, at Section II. E., pp. 4-5.
[26] Ex. C, Howson, 32:15-18; 35:3-12, (App. 000050, 000053).

Campbell had the same "scope and responsibilities."[27]   Incredibly, Howson insisted that

following Zayo's "RIF Process" to the letter was his paramount concern:

> Q:   If you had known at the time that Mr. Vega had dropped out of college
> and that, conversely, that Mr. Campbell had an MBA from Pepperdine,
> would that have made a difference in your decision or your – or your
> analysis of the decision to let Mr. Campbell go and retain Lawrence Vega?

> A:   Would not.

> Q:   Okay.   So I just want to understand, it was more important to you
> personally that Mr. Vega had been with the company 21 days longer than
> Mr. Campbell -- that factor was more important and overriding importance
> to the fact that Vega was a college dropout and Campbell had an MBA
> from Stanford -- I mean, from Pepperdine?

> A:   No.

> Q:   It wasn't more important?

> A:   It was more important that we were consistent and followed our process
> through that selection criteria.

> Q:   The process -- the RFI (sic) process, as you considered it, was an official
> policy -- an official process that had to be followed at Zayo, correct?

> A:   Correct.

> Q:   Was the technical title of Mr. Vega and the fact that he was not managing
> salespeople, was that relevant to you in deciding whether he was truly an
> incumbent in the same way that Mr. Campbell was an incumbent?

> A:   It was not.[28]

Of course, in this case, Zayo's RIF policy actually dictated that Vega, Director of

Strategic Alliances – the sole incumbent in the Account Director position that was eliminated –

should have been terminated based on a straightforward application of the RIF Process.  Instead,

Zayo terminated the 62-year-old Sales Director (Campbell) and replaced him with a 41-year-old

---

[27] Ex. C, Howson, 34:20-35:2, (App. 000052).
[28] Ex. C, Howson 41:11-42:14, (App. 000058 - 000059).

whose position had been eliminated.[29]

Notably, this was not the first instance in which Zayo had failed to follow its RIF Process.  Specifically, in his declaration, Bill Campbell describes the events leading up to Zayo's decision to retain him over Russell Smith for the one open sales leadership slot in Texas, detailing Zayo's decision to choose the incumbent with less seniority, a clear deviation from its RIF Process.[30]

## G.    Vega Was Not Qualified for the Sales Director Position

In response to Plaintiff's Request for Production, Zayo produced a total of 419 pages, and the sole Zayo job description produced was for that of Zayo's "Sales Director" position.[31]

This two page document is emblazoned at the top with the word "Zayo" in large font, and entitled "Sales Director."  The subheadings include, but are not limited to: "Job Summary," "Job Functions & Responsibilities," "Qualifications – Education / Experience" and "Other Requirements or Information – "Skills / Knowledge."  Under the "Qualifications – Education / Experience" heading there are several bullet-pointed lines that are relevant to this dispute:

- Bachelor's degree or equivalent from four-year College; or equivalent combination of education and experience.

- 3+ years demonstrated experience leading successful sales teams

- Strong financial acumen[32]

In his deposition, Howson testified that he was unaware that Zayo had a job description for the Sales Director position and that he had not seen this document before.[33]  Nevertheless, Howson testified:

---

[29] Ex. A, Campbell, 64:1-6, (App. 000015); Mays Decl., ¶ 14, (Def. App. 3).
[30] Exhibit I, Campbell Declaration, ¶24, App. 000106
[31] Exhibit H, Declaration of Walt D. Roper ("Roper Decl."), ¶ 8 (App. 000097); Ex. G, RFP, (App. 000093 – 000094).
[32] Ex. H, Roper Decl., ¶ 8, (App. 000097); Ex. G, RFP, (App. 000093 - 000094).
[33] Ex. C, Howson, 38:2-39:5, 39:24-40:4 (App. 000055 - 000056).

Q:      Do you . . . – under the category called "qualifications," do you see any of them bullet point text that you – that you disagree with as qualifications?

A:      (Reviewing documents.)  I don't.[34]

Williams claimed (suspiciously) that he had not seen the Zayo Job Description for Sales Director, but that he "absolutely" had seen job descriptions for sales director at Zayo and wasn't sure if it was this document or some other document.[35]

Howson went on to testify that he was not aware that Vega had dropped out of college.[36] Howson asserted (incredibly) that if he had known that Vega had dropped out of college and that Campbell had an MBA from Pepperdine, those facts would not have made a difference in his decision to let Campbell go and retain Vega.[37]

Similarly, when questioned about the requirement that the Sales Director have "3+ years demonstrated experience leading successful sales teams" Howson testified that he did not know whether or not Vega had led sales teams, but asserted (incredibly) that whether or not Vega had ever supervised or had salespeople reporting to him during his tenure at Zayo would not matter for purposes of determining whether Vega "was truly an incumbent who could be compared as a peer" with Campbell.[38]  Williams testified that "seniority," as he applied the RIF process, meant tenure with the company, and that seniority "in a position of managing people wasn't a criteria that mattered."[39]

Finally, Howson also admitted that he had no idea if Vega had "strong financial acumen," yet another **job requirement** for Sales Director.[40]

Put simply, the job description for the position of "Sales Director" at Zayo – the only job

---

[34] Ex. C, Howson, 40:14-19, (App. 000057).
[35] Ex. B, Williams, 34:9-35:3, (App. 000029 - 000030).
[36] Ex. C, Howson, 41:8-10, (App. 000058).
[37] Ex. C, Howson, 41:11-17, (App. 000058).
[38] Ex. C, Howson, 42:15-43:3, (App. 000059).
[39] Ex. B, Williams, 36:25-37:7 (App. 000031).
[40] Ex. C, Howson, 43:4-8, (App. 000060) (emphasis added).

description produced by Zayo in this litigation – contained job qualifications which Howson, Zayo's President of Sales, agreed with.  Moreover, Williams testified that he had "absolutely" seen job descriptions for Sales Director, but was not sure if this was the actual job description he had seen.  Regardless, Vega did not meet the qualifications for the position of "Sales Director," and, per Zayo policy, Zayo thus should never have considered Vega an "incumbent" alongside Campbell.

## H.    Campbell Was Clearly More Qualified Than Vega

In addition to the fact (as viewed in favor of non-movant Campbell) that Vega lacked the qualifications for the Sales Director Position, the facts, viewed in the light most favorable to Campbell, are that Campbell was clearly more qualified for Vega for the position.  First, Campbell had performed, and performed well in the position in question.[41]  Second, Vega had been subordinate to (reporting to) Campbell.[42]  Vega had not been a successful salesperson while reporting to Campbell, failing to sell anything.[43]  Vega had supervised nobody at Zayo, while Campbell had.[44]  Vega was a college drop out.[45]  Campbell had his MBA degree from Pepperdine, served honorably in the United States Marine Corps, with fighter pilot and Blue Angel distinction, and had retired from the United States Marines as a Lt. Colonel.[46]  A reasonable jury could conclude that Campbell was clearly more qualified for the Sales Director Position than Vega.

## I.    Zayo's Misrepresentations To and About the EEOC

---

[41] Ex. I, Campbell Decl, ¶ 19, (App. 000105).
[42] Ex. A, Campbell, 19:1-4, (App. 000008); Ex. I, Campbell Decl, ¶ 21, (App. 000105).
[43] Ex. I, Campbell Decl, ¶ 21, (App. 000105).
[44] Ex. B, Williams, 21:23-22:1; 61:4-9, (App. 000025 – 000026, 000036); Ex. D, Vega, 23:18-20, (App. 000067); Ex. I, Campbell Decl, ¶ 20, (App. 000105)..
[45] Ex. D, Vega, 5:10-6:9, (App. 000064 - 000065).
[46] Ex. A, Campbell 19:9-17; 38:3-13 (App. 000008, 000012); Ex. I, Campbell Decl., ¶ 4-9, (App. 000100 - 000102).

### 1.      Zayo Made Material Misrepresentations to the EEOC

Zayo submitted a position statement to the EEOC dated April 23, 2013 to defend against Campbell's charge of age discrimination before the agency.[47]   It its statement, Zayo misrepresented to the EEOC that (a) it had two incumbents in the same position, Vega and Campbell, and that (b) it then "followed its reduction in fore process to determine which" of them it would retain.[48]   The truth was that there was only one incumbent in the position being eliminated – Vega – and that Zayo failed to follow its reduction in force process by falsely claiming Vega and Campbell were both incumbents in the same position and by skipping Step 1 of the RIF criteria, under which Vega would have been RIF'd.

### 2.      The EEOC Did Not Issue a No Cause Finding In Response To Campbell's Charge

Zayo incorrectly asserts:  "Ultimately, the EEOC issued a determination letter on January 27, 2014, dismissing Campbell's charge of discrimination."[49]  And Zayo also incorrectly states in its "undisputed material facts"[50] "the EEOC found, 'there is no factual support demonstrating [Campbell's] age was the reason for termination."[51]   In fact, the letter from the EEOC dated January 27, 2014  was not an "EEOC Determination Letter" (the title Zayo uses).[52]  The January 27 letter was merely "a preliminary determination."[53]   Then, on February 11, 2014, the EEOC issued a "Dismissal and Notice of Rights" that included no determination, checked the "Other" box, and explained the reason for dismissal and issuance of the notice of rights as "CP filed a

---

[47] Ex. G, RFP, (App. 000087 - 000092)
[48] *Id.* at App. 90.
[49] MSJ, (Doc. 31), p. 10.
[50] MSJ, (Doc 31), p. 2.
[51] MSJ, (Doc. 31), p. 10.
[52] MSJ, (Doc. 31) p. 10, fns. 73 and 74.
[53] Defendant's Appendix, (Doc. 32-10), Ex.O, (Def.App. 233).

lawsuit in a competent court of law."[54]

### III.   ARGUMENTS AND AUTHORITIES

**A.   Summary Judgment Is Improper Where, Viewing the Evidence and Taking Inferences In Campbell's Favor, Material Factual Disputes Remain**

Federal Rule of Civil Procedure 56 should be construed "with due regard . . . for the rights of persons asserting claims adequately based in fact to have those claims and defenses tried to a jury. . . ."[55]   The Fifth Circuit has cautioned that summary judgment is a "potent weapon" and that "courts must be mindful of its aims and targets and beware of overkill in its use."[56]   Courts should be particularly circumspect where a case is scheduled for jury trial.

Summary judgment is appropriate only where the record contains no genuine issue as to any material fact, meaning that the movant is entitled to judgment as a matter of law.[57]   A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[58]

Zayo, as the moving party, bears the initial burden of showing its entitlement to judgment as a matter of law.[59]   It cannot meet this burden with the conclusory assertion that probative evidence does not exist.   Rather, it must show – through competent evidence – the absence of genuine material fact issues and that it is entitled to judgment as a matter of law.[60]   If it meets that burden, Campbell must then point to record evidence demonstrating the existence of

---

[54] Ex. G, RFP, (App. 000086).

[55] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[56] *Findeisen v. North East Indep. Sch. Dist.*, 749 F. 2d 234, 239 (5th Cir. 1984)(internal quotations omitted), *cert denied*, 471 U.S. 1125 (1985).

[57] FED. R. CIV. P. 56(c); *Foster v. Regis Trade Secret*, Civ. A. No. 3:07-cv-694-O, 2008 WL 731962 (N.D. Tex. Mar. 19, 2008).

[58] *Foster v. Regis Trade Secret*, Civ. A. No. 3:07-cv-694-O, 2008 WL 731962 *2 (N.D. Tex. Mar. 19, 2008) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

[59] *Id.*

[60] *Hall v. Smurfit-Stone Container Enter., Inc.*, Civ. A. No. 3:07-cv-0501-G, 2008 WL 3823252, *2 (N.D. Tex. Aug. 14, 2008).

material factual disputes.[61]  As long as "reasonable minds could differ as to the import of the evidence," such that factual disputes remain, the motion for summary judgment must be denied.[62]

In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 146-147 (2000), the Supreme Court unanimously confirmed the standard that courts must follow in assessing motions for summary judgment.[63]  *Reeves* and earlier precedent instruct that the Court must accept Campbell's evidence as true and draw all reasonable inferences in his favor.[64]  Meanwhile, the Court must avoid making credibility determinations in light of conflicting evidence or competing inferences.[65]  For "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are functions of a jury at trial, not those of a judge in ruling as a matter of law.[66]  Following *Reeves*, a plaintiff's discrimination claim may reach the jury upon a showing of his *prima facie* case and the falsity of his employer's explanation:

> In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. . . . [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.  Thus, a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.[67]

**B.    Campbell's Age Discrimination Claim Is Meritorious**

**1.  The Legal Framework For Analyzing Campbell's Age Discrimination Claim**

---

[61] *Foster*, 2008 WL 731962 at *2.
[62] *Id.* (quoting *Anderson*, 477 U.S. at 250).
[63] 530 U.S. 133 (2000).
[64] *Id.* at 150-151; *Anderson,* 477 U.S. at 255.
[65] *Foster*, 2008 WL 731962 at *3 (citing *Anderson*, 477 U.S. at 255).
[66] *Reeves*, 530 U.S. at 150-151; *see also Foster*, 2008 WL 731962 at *3 (noting that courts are not permitted to make credibility determinations when conflicting evidence is presented).
[67] *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147-48 (2000) (internal citations omitted).

In cases such as this one, where there is no evidence of overt discriminatory intent, Courts employ the *McDonnell Douglas* burden-shifting framework.[68] This method is often – though not always – necessary because "motives are often more covert than over. . . . "[69] For "[e]mployers are rarely so cooperative as to include a notation in the personnel file, 'fired due to age,' or to inform a dismissed employee candidly that he is too old for the job."[70] Moreover, circumstantial evidence is not only sufficient but the Supreme Court explains that it "may also be more certain, satisfying and persuasive than direct evidence."[71]

Under this analysis, Campbell is entitled to a presumption of discrimination if he meets the "minimal" initial burden of showing *prima facie* age discrimination.[72] His burden at this point is not onerous.[73] This is because *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic;" rather, it is "merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination."[74] The prima facie case raises a rebuttable inference of age discrimination.[75]

Because, as the Fifth Circuit has noted, "discrimination exists 'in forms as myriad as the creative perverseness of human beings can provide,' *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 753–54 (5th Cir.1980), certain specific elements do not constitute 'the alpha and omega' of a prima facie ADEA case, *id.* at 753."[76] Consequently, the Fifth Circuit saw fit, in *Williams v. General Motors Corp.*, 656 F.2d 120 (5th Cir.1981), *cert. denied*, 455 U.S. 943

---

[68] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)

[69] *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012).

[70] *Thornbrough v. Columbus & Greenville R.R.*, 760 F.2d 633, 638 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993).

[71] *See Desert Palace Inc. v. Costa,* 539 U.S. 90, 100 (2003) (internal quotation omitted).

[72] *Mission Consol.*, 372 S.W.3d at 634.

[73] *See id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)); *Bauer v. Albermarle Corp.*, 169 F.3d 962, 967 (5th Cir. 1999).

[74] *Furnco. Const. Co. v. Waters*, 438 U.S. 567, 577 (1978).

[75] *See Mission Consol.*, 372 S.W.3d at 634.

[76] *Thornbrough,* 760 F.2d at 642.

(1982), to "modif[y] the *McDonnell Douglas* test in the context of cases that . . .  involve a general reduction in an employer's workforce. . . ."[77]  Thus, the *Williams* test is an alternative to the *McDonnell Douglas* test in RIF cases.

Regardless of which of these two tests is employed – the *McDonnell Douglas* test or the *Williams* test – the burden then shifts to Zayo to offer a sufficiently clear legitimate, non-discriminatory reason for each of its actions.[78]

The Fifth Circuit explains the burden-shifting scheme as follows: If [the plaintiff] succeeds [in establishing a prima facie case], the burden shifts to the employer to provide a legitimate, nondiscriminatory reason for terminating employment.  If the employer satisfies this burden, the burden shifts back to the employee to prove either that the employer's proffered reason was not true — but was instead a pretext for age discrimination — or that, even if the employer's reason is true, he was terminated because of his age.[79]  Plaintiff need not show that age discrimination was the sole cause of his termination.[80]

### 2. Campbell Establishes a *Prima Facie* Case of Age Discrimination Under *McDonnell Douglas*

Campbell can easily establish each of the prongs of a *prima facie* case under the ADEA. The first three prongs of the *McDonnell Douglas* analysis – that (1) he was discharged; (2) that he was qualified for the position; and (3) that he was within the protected age group at the time of the discharge – are undisputed.  The fourth prong requires that Campbell show that he was either (i) replaced by someone substantially younger, (ii) replaced by someone outside the

---

[77] *Id.*

[78] *See Alvarado v. Texas Rangers, et al.*, 492 F.3d 605, 615-16 (5th Cir. 2007) (clarifying the employer's burden of articulation when the alleged reason is subjective); *see also, Patrick v. Ridge*, 394 F.3d 311, 318 (5th Cir. 2004)(employer must articulate a nondiscriminatory reason with 'sufficient clarity' to afford the employee a realistic opportunity to show the reason is pretextual"(internal citations omitted)).

[79] *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (2013) (*citing Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180, 129 S.Ct. 2343, 2352, 174 L.Ed.2d 119 (2009)).

[80] *Leal v. McHugh*, 731 F.3d 405, 415 (5th Cir. 2013).

protected class, or (iii) otherwise discharged because of his age.  This is the prong that Zayo claims Campbell cannot establish.  Zayo asserts that despite its transparent two-step move of Vega to facilitate the RIF of Campbell, a process where Zayo replaced Campbell with Vega, "Campbell cannot show he was replaced."[81]

> ### a. The Fact that Zayo Replaced Campbell as Sales Director with the Substantially Younger Vega Satisfies the Fourth Prong of a *Prima Facie* Case of Age Discrimination under *McDonnell Douglas*

Zayo claims that Campbell was not replaced because the "Director [of] Texas Sales position . . . was not filled."[82]  Rather, Zayo contends, this position was "combined" with another position and "changed to form a new go forward regional Sales Director role."[83]  Zayo attempts to buttress its "role combination" narrative by claiming that the allegedly new and improved Sales Director position's job duties were simultaneously broader and narrower than Campbell's old Sales Director role.[84]  Particular tasks, Zayo claims, were outsourced to other employees, while the geographical scope was expanded – so much so that the new position and the old position were, according to Zayo, "not identical."[85]  "Therefore," Zayo concludes, Campbell "cannot show that he was replaced by someone substantially younger than him or someone outside of his protected class for purposes of establishing a prima facie case of age discrimination."[86]

Yet no amount of after-the-fact spin allows Zayo to put the genie back in the bottle:  in the email that initiated the personnel change that is at issue in this lawsuit, Williams states, quite simply, "We are <u>eliminating</u> the position that Lawrence Vega currently holds, Director, Strategic

---

[81] MSJ, (Doc. 31), p. 12.
[82] MSJ, (Doc. 31), p. 12.
[83] MSJ, (Doc. 31), p. 12.
[84] MSJ, (Doc. 31), pp. 12-13.
[85] MSJ, (Doc. 31), p. 13.
[86] MSJ, (Doc . 31), p. 13.

Alliance and recommend <u>moving</u> Lawrence into the Sales Director role."[87]   David Howson, President of Sales for Zayo, flat out admitted in his deposition that the position actually eliminated was Director, Strategic Alliances (i.e. Vega's position).[88]   Thus, the evidence shows that Zayo (1)  eliminated the position of Director of Strategic Alliances, not Campbell's position; (2) Zayo terminated Campbell; and (3) Zayo replaced Campbell with Vega, who Zayo "mov[ed] into the Sales Director role," Campbell's old spot.

When viewed in light of these facts, Howson's alleged paramount concern that the official Zayo RIF "process" be followed to the letter[89] is exposed as a falsity (and pretext).  Had Zayo followed its policy, it would have stopped at Step 1, and RIF'd Vega, the person whose job was being eliminated. Campbell was the only "incumbent" in the Texas Sales Director position, and Vega was the only "incumbent" in the Director of Strategic Alliances position. Consequently, Zayo consciously violated its own RIF process; Zayo simply replaced Campbell (age 62) with a substantially younger Vega (age 41). Zayo's attempt to launder Campbell's termination through its RIF process fails.

Zayo's legal authorities are as unreliable as its "undisputed material facts" (which it would spin in its favor).[90]   In *Horak v. Glazer's Wholesale Drug Co.*, 2006 WL 2017110 (N.D. Tx. July 19, 2006) a case cited by Zayo, it was "undisputed," the District Court stated, that the defendant "did not hire anyone to fill Horak's Key Accounts Manager position."[91]   Rather, in *Horak*, the terminated employee's "job duties were reassigned to a variety of employees" and – critically – the Key Accounts Manager Position <u>ceased to exist</u>.[92]   Here, there is clearly evidence

---

[87] Ex. G, RFP, (App. 000082 - 000084) (emphasis supplied).
[88]   See *infra*, section II. E., pp 4-5; Ex. C, Howson, 36:6-11 (App. 000054).
[89]   Ex. C, Howson, 41:18-42:4, (App. 000058 – 000059).
[90] MSJ, (Doc. 31), pp. 2-10.
[91] *Horak v. Glazer's Wholesale Drug Co.*, 2006 WL 2017110, *4 (N.D. Tex. July 19, 2006).
[92] *Id.*

that Campbell was, quite literally, terminated and replaced with a younger worker.[93]  Campbell's former position, Sales Director, certainly did not cease to exist.

More recent Northern District authority casts further doubt on *Horak's* applicability in this case.  In *Kean v. Jack Henry & Assoc., Inc.*, 2013 WL 2983504 (N.D.Tx. June 17, 2013), the Court "assumed without deciding that Plaintiff has met his *prima* facie burden" in an ADEA case based partially on a recent Fifth Circuit opinion in which "the Fifth Circuit noted in a footnote in that, where only a single job was eliminated, as opposed to a company-wide reduction-in-force, a plaintiff may establish a *prima facie* case of discrimination even where his position was eliminated and the job duties were absorbed by other existing employees."[94]  Judge Boyle wrote in *Kean*, "*Howard* might be distinguishable on the basis that all of the employee's duties were reassigned to a single employee, thereby making the situation more akin to a replacement rather than a job elimination, but the language in *Howard* is nonetheless clear."[95]  Seen in the light most favorable to Campbell, his situation is a replacement rather than a job elimination.

> **b.  Because Campbell Has Shown that He Was Replaced by Someone Substantially Younger, He Need Not Show that He Was "Otherwise Discharged Because of His Age" to Establish a *Prima Facie* Case**

As detailed *infra* at section III.B.2, pages 15-16, the fourth prong of the *McDonnell Douglas* analysis may be satisfied by offering evidence of merely one of three alternative conditions.  Since Plaintiff has already shown that he was replaced by someone substantially younger (age 62 Campbell replaced by age 41 Vega), Campbell need not show that he was

---

[93] Moreover, the Court's opinion in *Horak* was premised upon the Fifth Circuit's opinion in *Dulin v. Dover Elevator Co.*, 139 F.3d 898, at *2-3 (5th Cir.,1998) (unpublished), in which the Court held that "applicable case law holds that when an employee's position has been eliminated and the job duties reassigned to existing employees, that employee has not been replaced."  Again, the Sales Director position was not eliminated, and so this case does not apply.

[94] *Kean v. Jack Henry & Assoc., Inc.*, 2013 WL 2983504, *6 (N.D.Tx. June 17, 2013)*, citing to *Howard v. UPS, Inc.*, 447 F.App'x 626, 629 n. 2 (5th Cir. 2011).

[95] *Id.*

"otherwise discharged because of his age" to establish a *prima facie* case.  Therefore, Zayo's

argument in section III.B.2.b. of its Motion is irrelevant.[96]

### 3. Alternatively, Campbell Easily Meets the Low *Prima Facie* Burden Under the *Williams* Test Applicable to RIF Cases

In a RIF case, the *prima facie* elements are altered from other cases of age

discrimination.[97]  Here, Campbell establishes a *prima facie* case with evidence that (1) he is 40

years of age or older, (2) suffered an adverse employment action, and (3) was qualified to

assume another position at the time of his firing, and (4) "evidence, either circumstantial or

direct, from which a factfinder might reasonably conclude that [Zayo] intended to discriminate"

against him.[98]   Evidence that a younger employee remained in a similar position after

Campbell's firing is sufficient to raise a fact issue on this last element,[99] as it is the retention of

younger employees after the firing of a qualified older employee that creates the presumption of

discrimination:

> [W]hat is suspicious in reduction-in-force cases is that the employer fired a
> qualified, older employee but retained younger ones.  If we focus not on why
> employees, in general, were discharged … but instead on why the plaintiff rather
> than another employee was discharged, the discharge of an older employee rather
> than the younger one is initially unexplained.[100]

---

[96] MSJ, (Doc. 31), pp. 13-15.

[97] *Thompson v. Origin Tech. in Bus., Inc.*, Civ. A. No. 3:99-cv-2077-L, 2001 WL 1018748, *5 (N.D. Tex. Aug. 20, 2001) (citing *Thornbrough*, 760 F.2d 633); *see also Furnco Const. Co.*, 438 U.S. at 577 (noting that *McDonnell Douglas* was "never intended to be rigid, mechanized, or ritualistic ….").

[98] *Woodhouse v. Magnolia Hospital*, 92 F.3d 248, 252 (5th Cir. 1996); *Thompson*, 2001 WL 1018748 at *5; *see also Uffelman v. Lonestar Steel Co.*, 863 F.2d 404, 407 (5th 1989)(concluding that jury was entitled to accept plaintiff's evidence that the "reduction in force, itself admittedly justified, did not explain [the] decision to discharge [the plaintiff] while retaining several younger, less experienced engineers who continued to perform tasks that [the plaintiff] was qualified to do").

[99] *See Horak*, 2006 WL 2017110, *4 (citing *Faruki v. Parson S.I.P., Inc.*,123 F.3d 315, 318 (5th Cir. 1997) and *Meinecke v. H & R Block of Houston*, 66 F.3d 77, 83 (5th Cir. 1995)); *Thompson*, 2001 WL 1018748 at *5; *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 353-54 (5th Cir. 2005) (concluding that retention of younger employee coupled with the plaintiff's termination gave rise to an inference that plaintiff was terminated because of age); *Koettner v. Northrop Grumman Commercial Info. Services, Inc.*, Civ. A. No. 3:03-cv-2208M, 2005 WL 781708, *3 (N.D. Tex. Apr. 6, 2005)(finding that fact that three younger, less experienced candidates for RIF were retained was sufficient showing of disparate treatment at *prima facie* stage).

[100] *Thornbrough*, 760 F.2d at 644, *abrogated on other grounds by St. Mary's Honor Center*, 509 U.S. at 502.

Campbell's *prima facie* evidence raises exactly this sort of suspicion.   It shows that Zayo retained the younger, less qualified Vega as Sales Director, while selecting Campbell for termination under the RIF.

### 4.   Zayo's Invocation of the RIF Was Merely a Pretext for Age Discrimination

Zayo asserts that its legitimate, non-discriminatory reason for Campbell's discharge is its strict adherence to its RIF procedures. Thus, the next question is whether there is a material dispute on whether Zayo terminated Campbell because of his age. Campbell can show either Zayo's proffered reason was not true—but was instead a pretext for age discrimination — or that, even if Zayo's reason is true, he was terminated because of his age.[101]   The summary-judgment record contains sufficient pretext evidence to satisfy either standard.

Zayo starts its pretext arguments with a misstatement of law.[102] The citation to *Elgaghil v. Tarrant County Junior Coll.*, 45 S.W.3d 133 (Tex. Ct. App.—Ft. Worth 2000, no pet.), attempts to revive the moribund "pretext-plus" standard. The United States Supreme Court rejected this standard requiring discrimination plaintiffs to supply additional discrimination evidence after showing pretext.[103]   Thus, a jury is entitled to infer age discrimination from Campbell's *prima facie* case and sufficient pretext evidence.[104]

Further, Zayo's reprisal of the business-judgment rule—that discrimination laws are not vehicles for judicial second-guessing—bears a brief response.[105]   While courts do not sit as external personnel departments, Zayo's version of the business-judgment rule omits a critical caveat.   Although an employer's decision may be misguided, even erroneous, it may not be

---

[101]   *Miller*, 716 F.3d at 144.
[102]   MSJ, (Doc. 31), p. 16.
[103]   *Reeves*, 530 U.S. at 148.
[104]   *Reeves*, 530 U.S. at 146-47.
[105]   MSJ, (Doc. 31), pp. 17-18.

unlawfully motivated.[106]  Thus, by definition, examining pretext evidence is not judicial second-guessing.

Similarly, Zayo cannot simply rely on its written non-discrimination policy.[107]  However unlikely, a jury might credit a self-serving policy like this. But the Court on summary judgment should give it no weight. Instead, a more probing examination is required.[108]  Likewise, employers of even minimal sophistication will – with a nod and a wink – instruct decision-makers not to consider age. Yet age discrimination occurs.[109]

Campbell shows pretext with evidence that Zayo's asserted reason is false or unworthy of belief.[110]  Zayo's asserted reason for terminating Campbell is unworthy of belief for at least **five reasons**. **First**, there is the obvious fact that the most relevant piece of evidence in this case – the email communication requesting approval to terminate Campbell – explicitly and unambiguously states that Vega's position is being eliminated.[111]  Howson testifies that this position was actually the true position that was being eliminated.[112]  Thus, the notion that there were two incumbents for "the position" is manufactured and false.  Campbell was the only incumbent in the Sales

---

[106] As the Northern District of Texas noted in a related context, in affirming a substantial age-discrimination verdict, "the jury verdict does not second guess Defendant's decision to cut costs via a RIF [but rather] finds that in the context of using an appropriate business tool, Defendant improperly selected Plaintiff for termination on the basis of age." Exhibit J, (App. 000107 – 000139), Order Resolving Post-Trial Motions (Doc. 168), *Miller v. Raytheon Co.*, 3:09-cv-0040-O, slip. op. at 14 (N.D. Tex. May 13, 2011). The Fifth Circuit affirmed the denial of Raytheon's post-trial motion for judgment as a matter of law. *Miller*, 716 F.3d at 144-145. *See Boehms v. Crowell, et al.*, 139 F.3d 452, 459 (5th Cir. 1998); *Bauer*, 169 F.3d 962, at 967 (explaining that an employer's belief about an employee's qualifications need not be correct, so long as that belief is reasonable, not arbitrary, and not a likely pretext for unlawful discrimination).

[107] Mays Decl. (Doc 32-9), ¶ 5, (Def. App. 215)

[108] *Cf. Riordan v. Kempiners*, 831 F.2d 690, 697-98 (7th Cir. 1987) (employers of "even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it . . . ")

[109] *E.g.*, *Miller*, 716 F.3d at 144-145 (affirming ADEA age-discrimination verdict where circumstantial evidence, including the employer's post-termination dissembling, created a conflict in substantial evidence); *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 578 (5th 2003)(reversing judgment as a matter of law and holding that jury was entitled to believe plaintiff's theory that RIF was cover for move to replace older salesmen with younger saleswomen).

[110] *See Reeves*, 530 U.S. at 134.

[111] Ex. G, RFP, (App. 000082 - 000084).

[112] Ex. C, Howson, 36:6-11, (App. 000054).

Director position, which position was not eliminated.  Consequently, Vega was the one who should – according to the RIF process – be terminated.

**Second**, the assertion that Vega, an "Account Director" and Campbell, the Sales Director, were "peers based on the scope of their responsibilities and the reporting structure,"[113] is, quite simply, not credible.  In the Zayo heirarchy, a Sales Director manages people, whereas an Account Director does not.[114]  Campbell managed eight employees, including Account Executives, Senior Account Executives, the Director of Engineering, and Sales Engineers; these people reported to him.[115]  Conversely, Vega, the Account Director, did not manage anyone, and nobody reported to him.[116]  This subjective, fact-bending decision to treat the two as incumbents in the same position tainted the purportedly objective RIF process.

**Third**, Zayo's witnesses suspiciously disavow any applicability of the only job description of a "Sales Director" produced by Zayo.[117]  Moreover, Zayo itself avoids any mention of this job description or the qualifications mandated by it in its Motion.  For good reason:  Campbell was qualified, by virtue of his education (an MBA, not a college dropout), by virtue of his financial acumen, and by virtue of the fact that he had actually managed people.[118]  His replacement as Sales Director did not share any of these qualities and thus he was simply not qualified.[119]  Even if Vega was minimally qualified (for promotion to the job Campbell already held), Campbell was clearly better qualified for the job.

**Fourth**, despite the facts that (1) Howson and Campbell repeatedly and consistently disclaimed that "performance" played any role in the selection of Vega over Campbell; (2) that

---

[113] MSJ, (Doc. 31), p.17.
[114] Ex. D, Vega, 55:14-19, (App. 000071).
[115] Ex. I, Campbell Decl., ¶ 20, (App. 000105).
[116] Ex. D, Vega, 23:18-20, (App. 000067).
[117] Ex. C, Howson, 41:11-17, (App. 000058).
[118] Ex. A, Campbell, 19:9-17, (App. 000008); Exhibit E, Excerpts from the Deposition of Doug Turtz ("Turtz"), 9:18-10:12, (App. 000075 - 000076).
[119] See argument and supporting evidence, *infra* at section II.G., pp. 8-10.

neither had any reason to question Campbell's performance; and (3) that Williams had only been in a position to oversee Campbell for "matter of days," Williams stated falsely in his termination request email that "Lawrence has equal or superior skills for the role."[120]   This sounds like a performance-based comparative judgment and, being false or at least suspicious (like Williams is trying to build a case for what he knows is wrong), supplies evidence of mendacity.[121]

**Fifth**, the reliance on seniority as an objective criteria in the RIF process is contrived. Even if one makes no distinction between Campbell's time with Zayo in an actual management position as distinct from Vega's non-management position and looks strictly at the number of days each had worked at Zayo, there is only a 21-day difference in seniority, a distinction without a difference.[122]   And Zayo's mention of so-called objective criteria – 21 days more seniority for Vega than Campbell – backfires.  Step 1 of the RIF procedure looks to see if there is only one incumbent in the position being eliminated.  Here the one person was Vega.  Applying objective criteria, Zayo should not have counted and compared Vega's and Campbell's days with Zayo.

### 5.    Other Evidence of Age Discrimination

Besides his substantial evidence of pretext, Campbell has other evidence of age discrimination that warrants a jury trial in this matter.  Here Zayo had a double standard, one that was tougher for 62 year-old Campbell.  When it came to a RIF, Zayo was willing to look away from its rules for Vega and to ignore his lack of qualifications and puff up his skills, while doing the opposite to Campbell.  Evidence that younger employees remained in similar positions and that

---

[120] Ex. B, Williams, 36:16-19, (App. 000031);  Ex. C, Howson, 32:20-34:11, (App. 000050 - 000052).

[121] See *St. Mary's Honor Center*, 509 U.S. at 511.

[122] *See, e.g.   Brewer v. Cedar Lake Lodge, Inc.*, 243 Fed.Appx. 980, 989 (6th Cir. 2007) (characterizing an 18-month difference in seniority as "marginal," and finding employer's decision based on seniority pretextual in a race discrimination case).

young Vega took over Campbell's job after his firing raises an inference of discrimination.[123]
Retaining younger employees after firing a qualified older employee is suspicious and suggests
discrimination.[124]  Having a double standard, applying tougher standards for older employees than
younger ones is powerful evidence of age discrimination.[125]

Additionally, Zayo made material misrepresentations to the EEOC, seeking to leave the
impression that there was no age discrimination because Zayo followed its RIF procedure, when,
in fact, it favored a younger employee (Vega) and violated its own RIF procedure to accomplish
Campbell's termination.  As in *Miller*, *supra*, "The jury [is] free to consider this discrepancy in
determining whether Defendant violated the ADEA . . . ."[126]

### 6.     Zayo is Not Entitled to a "Same Actor" Inference

Zayo argues that it is entitled to the "Same Actor" inference, claiming that Howson was
"involved in both the decision to hire and the decision to terminate Campbell at Zayo."[127]  The
facts presented in this case are similar to those presented in another Northern District of Texas
case in which there were multiple persons allegedly "involved" in the termination:

> Thompson asserts that he was initially hired by Baker, demoted by Truitt, and terminated
> by Giesbers. Origin argues that "Thompson did not become less desirable as an employee
> between the time he was hired at the age of sixty-three (63) years, and the time he turned
> sixty-four (64) years of age" or the time he was terminated, nine months after being
> hired.  This argument places the focus on the objective desirability of Thompson as an
> employee, which is not the relevant issue. The rationale for the "same actor" doctrine
> relies on the decision maker's animus (or lack thereof) toward members of a protected
> class. Animus on the basis of age, in this context, is specific to an individual decision
> maker. The apparent absence of age bias by Baker creates no inference as to a similar

---

[123] *See Machinchick*, 398 F.3d at 353-54; *see also Uffelman*, 863 F.2d at 407-08 (accepting as evidence of
discrimination that the employer retained several, less-experienced engineers in positions for which the plaintiff
was qualified).

[124] *Woodhouse*, 92 F.3d at 253; *see also Uffelman*, 863 F.2d at 407 (concluding that that the "reduction in force,
itself admittedly justified, did not explain [the] decision to discharge [the plaintiff] while retaining several
younger, less experienced engineers who continued to perform tasks that [the plaintiff] was qualified to do").

[125] See, e.g. *Guthrie v. J.C. Penny Co., Inc.*, 803 F.2d 202, 208 (5th Cir. 1986); *Uffelman*, 863 F.2d at 408.

[126] *See* Ex. J, (App. 000107 – 000139), Order Resolving Post-Trial Motions (Doc. 168), *Miller v. Raytheon Co.*,
3:09-cv-0040-O, slip. op. at 14 (N.D. Tex. May 13, 2011).

[127] MSJ Brief, (Doc. 31), p. 19.

lack of animus by Giesbers. Even if it did, the "same actor" doctrine creates only an inference, which can be overcome by sufficient evidence that the stated reason for the termination was pretext for age discrimination.[128]

In the instant case, the evidence shows that while Howson may have hired Campbell, his role in the termination was – in Howson's own words – an "approval role."[129] And it was Williams who puffed up Vega's purported qualifications and actually initiated Campbell's termination, with Howson (along with Sandi Mays and ADP) functioning in approval roles.[130] Moreover, there is no evidence that Williams participated in Campbell's hiring. Consequently, because there was not a complete identity of hirers and firers, the "Same Actor" inference is inapplicable. Even if it were applicable, it is overcome by Campbell's evidence that the stated reasons for the termination were pretextual.

## IV.    CONCLUSION

Campbell has produced substantial evidence supporting a *prima facie* showing of age discrimination and evidence that Zayo's RIF-based explanation for the selection of Campbell for termination are pretextual. Campbell has also produced substantial evidence that Zayo gave better treatment to young Vega, and that it used a double standard. Consequently, Plaintiff Campbell respectfully asks the Court to deny Defendant's Motion for Summary Judgment.

---

[128] *Thompson,* No. 3:99-CV-2077-L, 2001 WL 1018748, at *9. (citations omitted).
[129] Ex. C, Howson, 25:18-24, (App. 000044).
[130] Ex. B, Williams, 26:6-15, (App. 000027).

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Plaintiff's Brief in Support of His Response in Opposition to Defendant's Motion for Summary Judgment was electronically filed with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" on March 13, 2015, to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

| | |
|---|---|
| Victor N. Corpuz, Esq. | Allyson L. Johnson, Esq. |
| State Bar No. 04838450 | Texas Bar No. 24054005 |
| corpuzv@jacksonlewis.com | johnsona@jacksonlewis.com |

JACKSON LEWIS P.C.

500 N. Akard, Suite 2500

Dallas, Texas 75201

PH: (214) 520-2400

FX: (214) 520-2008

**ATTORNEYS FOR DEFENDANT**


*/s/ Walt D. Roper*

Walt D. Roper

`