IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIAM FRANCIS CAMPBELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-2192-D |
| VS. | § | |
| | § | |
| ZAYO GROUP, LLC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

A plaintiff whose employment was terminated when two positions were combined—and who was older, but had 21 fewer days of seniority, than the employee who was retained—brings this action alleging age discrimination, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* Concluding that a reasonable jury could not find that plaintiff's age was the but-for cause of his termination, the court grants summary judgment in favor of defendant and dismisses this action with prejudice.

I

In April 2012 AboveNet hired plaintiff William Francis Campbell ("Campbell"), then age 61, as its sole Sales Manager for North Texas.[1] Three months later, defendant Zayo

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to Campbell as the summary judgment nonmovant and draws all reasonable inferences in his favor. *See, e.g.*, *Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Group, LLC ("Zayo")[2] acquired AboveNet. Zayo retained Campbell, but changed his title to Director of Texas Sales, enlarging his managerial duties to include the entire state of Texas.[3] Campbell's substantive duties in his expanded role were essentially the same as they had been at AboveNet: he supervised eight employees, including Account Executives, Senior Account Managers, the Director of Engineering, and Sales Engineers.

Campbell initially reported to Chris Murphy ("Murphy"), the Senior Vice President of Sales. Murphy, in turn, reported to David Howson ("Howson"), Zayo's President of Sales. In Howson's role as President of Sales, he was responsible for approving the head count associated with hiring and all terminations, including reductions in force ("RIFs"). In June or July 2012 Zayo developed a Strategic Alliances organization primarily responsible for industry-specific sales and building relationships within potential clients in technology, transportation, and equipment manufacturing. Steven Williams ("Williams") was chosen to lead this group and became Senior Vice President of Strategic Alliances. Williams selected Lawrence Vega ("Vega"), whom Williams had hired in March 2012, for the role of Director of Strategic Alliances for the Central Region of the United States. At the time Vega was

---

[2]Zayo is an international provider of fiber-based bandwidth infrastructure services and carrier-neutral colocation and interconnection services. According to Zayo, since July 2007 it has acquired 34 companies, and it restructures departments frequently as the company grows, with reorganizations occurring often, approximately every six months.

[3]Campbell was selected for the Director of Texas Sales position over Russell Smith ("Smith"), another AboveNet sales employee. At the time Zayo selected Campbell for the position, he was more than eight years older than Smith, who was not offered employment with Zayo.

hired, he was 41 years old.

In January 2013 Zayo underwent a corporate reorganization to consolidate its Strategic Alliances and Sales organizations. As part of the reorganization, Zayo transferred Williams from his role as Vice President of Strategic Alliances to Senior Vice President of Sales for Zayo's Central Region. On January 2, 2013 Murphy contacted Campbell to inform him that, effective immediately, he would report to Williams. According to Zayo, in conjunction with the reorganization, Williams made plans to consolidate the Director of Strategic Alliances position held by Vega and the Director of Texas Sales position held by Campbell into one remaining Sales Director role for the Central Region, with responsibilities for both positions. The responsibilities of the new regional Sales Director position would involve duties previously performed by the Director of Strategic Alliances, including development of relationships with partners and key vendors of Zayo—tasks that Campbell had not previously performed. In addition, the territory of the new position would include not only Texas but also Nebraska, Kansas, Oklahoma, and Arkansas.

On January 9, 2013, just days after Williams became Campbell's supervisor, Williams sent an email to Sandi Mays ("Mays"), Zayo's Chief of Staff, seeking approval to terminate Campbell. In his email, Williams proposed a "consolidation of staff" in the Dallas market, P. App. 82, which involved eliminating the position held by Vega, moving Vega into the position of Sales Director, and terminating Campbell's employment. According to Williams' email, the two incumbents in these positions were Campbell and Vega. Vega was selected for retention over Campbell because Campbell had less seniority, and Vega had "equal or

superior skills" for the role. *Id.* Howson and Mays endorsed Williams' decision. Campbell's employment was terminated on January 10, 2013.

Zayo uses a set procedure when it acquires another company and implements a RIF. Its RIF Process states:

> Based on the following criteria, an employee's position is selected for elimination. [Select in the following order]
> 1. Only Incumbent in eliminated position
> 2. Seniority (less than other Incumbents)
> 3. Job performance (only if performance is documented and has been communicated to the impacted person)
> 4. Qualifications (provide specific qualifications necessary to complete the job that other Incumbents have, that others don't)
> 5. Geographic mobility (you offered the position to the employee, and they declined to move)

P. App. 85. Campbell maintains that "[a]pplication of the process is supposed to be fairly straightforward: If the reduction is accomplished by Step 1, then there is no need to move on to Step 2; if Step 2 is dispositive, then there is no need to move on to Step 3, and so forth." P. Br. 6. Campbell contends that Zayo's RIF policy dictated that Vega—the Director of Strategic Alliances, and the sole incumbent in the Account Director position that was eliminated—should have been terminated; instead, Zayo terminated Sales Director Campbell, age 62, and replaced him with Vega, a 41-year-old whose position had been eliminated.

Campbell obtained a right to sue letter from the Equal Employment Opportunity Commission ("EEOC") and filed this lawsuit alleging that he was discharged because of his age, in violation of the ADEA. Zayo moves for summary judgment. Campbell opposes the motion.

II

Because Campbell will bear the burden of proof on his claim at trial, Zayo can meet its summary judgment obligation by pointing to the absence of admissible evidence to support the claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once Zayo does so, Campbell must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict in Campbell's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Campbell's failure to produce proof as to any essential element of his claim renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted). Summary judgment is mandatory if Campbell fails to meet this burden. *See Little*, 37 F.3d at 1076.

III

Campbell alleges that Zayo violated the ADEA by terminating his employment due to his age. It is unlawful under the ADEA "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To prove age discrimination, a plaintiff can rely on direct or circumstantial evidence. *See, e.g., Flanner v. Chase Inv. Servs. Corp.*, 600 Fed. Appx. 914, 917 (5th Cir. 2015) (per curiam) ("To establish an age discrimination claim, an employee must prove by a preponderance of the evidence, which may be direct or circumstantial, that age was the 'but for' cause of the employer's adverse decision."). Because Campbell is relying on circumstantial evidence, he must establish discrimination

using the "modified *McDonnell Douglas* approach."[4] *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).

As modified, *McDonnell Douglas*[5] consists of three stages. First, Campbell must establish a prima facie case of discrimination, which "creates a presumption that [Zayo] unlawfully discriminated against [him]." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Second, the burden shifts to Zayo to articulate a legitimate, nondiscriminatory reason for terminating Campbell's employment. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). Zayo's burden is one of production, not proof, and involves no credibility assessments. *See, e.g., West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003). This "burden requires the production of admissible evidence in support of its nondiscriminatory reasons." *Hervey v. Miss. Dep't of Educ.*, 404 Fed. Appx. 865, 868 (5th Cir. 2010) (per curiam) (citing *Burdine*, 450 U.S. at 255). Third, if Zayo meets its production burden, "the burden shifts back to the plaintiff to make an ultimate showing of intentional discrimination." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012). At this final stage of the *McDonnell Douglas* framework, "[u]nder the ADEA, a plaintiff

---

[4]In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Supreme Court noted that it "has not definitively decided whether the evidentiary framework of *McDonnell Douglas* . . . is appropriate in the ADEA context." *Id*. at 175 n.2. The Court relied instead on a textual analysis of the ADEA to resolve the question whether a plaintiff can succeed on a "mixed-motives" claim of age discrimination. Absent Supreme Court authority, the court will follow the Fifth Circuit's post-*Gross* precedent and apply *McDonnell Douglas* to ADEA cases. *See, e.g.*, *Chamblee v. Miss. Farm Bureau Fed'n*, 551 Fed. Appx. 757, 759 (5th Cir. 2014) (per curiam) (applying *McDonnell Douglas* framework to ADEA claim).

[5]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

must prove that age was the 'but for' cause of the challenged adverse employment action." *Id*. at 440 (citing *Moss v. BMC Software, Inc.*, 610 F.3d 917, 928 (5th Cir. 2010)); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

These three steps constitute the *McDonnell Douglas* framework. "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253).

IV

Under the *McDonnell Douglas* framework, Campbell must first establish a prima facie case of age discrimination.

A

"To establish a prima facie case, a plaintiff need only make a very minimal showing." *Nichols v. Loral Vought Sys. Corp*., 81 F.3d 38, 41 (5th Cir. 1996) (quoting *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985)) (brackets and internal quotation marks omitted). A prima facie case merely raises the inference of discrimination, because the court presumes that the employer's acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. *See Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577 (1978). In an age discrimination case, a plaintiff is only required to show that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by

someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Jackson v. Cal-Western Packaging Corp*., 602 F.3d 374, 378 (5th Cir. 2010) (quoting *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007)) (internal quotation marks omitted). "In cases involving a RIF where the plaintiff has not been replaced, the fourth element of the prima facie case can be established by evidence that members outside the protected class remained in similar positions after the RIF." *Hall v. Sealy, Inc*., 2011 WL 4389701, at *4 (N.D. Tex. Sept. 21, 2011) (Fitzwater, C.J.).

B

Zayo contests only the fourth element of Campbell's prima facie case. It argues that Campbell cannot show that he was "replaced" by someone younger because the Director of Texas Sales position that Campbell occupied at the time of his termination was never filled. Rather, the position was combined with the Director of Strategic Alliances position, with the new regional Sales Director performing some of the Director of Strategic Alliances duties and some of the Director of Texas Sales duties with an expanded territory. Zayo contends that Campbell cannot show that he was otherwise discharged because of his age because it is undisputed that he was selected for termination because Vega had more seniority with Zayo; Campbell has no evidence that his age was even considered by Zayo in the decision-making process; and Zayo's predecessor hired Campbell when he was 61 years old, and it is illogical to find that Zayo would then terminate him six months later based on his age.[6]

---

[6]To the extent Zayo contends the "same actor inference" applies in the context of Campbell's prima facie case or in connection with the court's pretext analysis, because the

Campbell relies in response on Williams' January 9, 2013 email to Mays, in which he states: "[w]e are eliminating the position that [Vega] currently holds, Director, Strategic Alliances and recommend moving [Vega] into the Sales Director role." P. App. 82. Campbell appears to argue that his termination was *not* part of a RIF—i.e., had Zayo followed its RIF policy, it would have terminated Vega, the person whose job was being eliminated—and that the evidence shows that Zayo eliminated Vega's position, terminated Campbell, and *replaced* Campbell with Vega. Alternatively, Campbell argues that under the *Williams*[7] test applicable to RIF cases, he can raise a fact issue through undisputed evidence that a younger employee (Vega) remained in a similar position after Campbell was terminated.

C

"[T]o establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough*, 760 F.2d at 639. That is, the burden is not an onerous one. *Burdine*, 450 U.S. at 253. A prima facie case merely raises the inference of discrimination, because the courts presume the employer's acts, if otherwise unexplained, are more likely

---

court is granting Zayo's motion for summary judgment on other grounds, the court need not assess whether Zayo would be entitled to summary judgment if the "same actor inference" were applied.

[7]*Williams v. Gen. Motors Corp.*, 656 F.2d 120, 130 (5th Cir. Unit B 1981) (holding, in RIF case, that plaintiff can satisfy final element of prima facie case by producing evidence that "lead[s] the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining or relocating a plaintiff because of his age, or (2) defendant regarded age as a negative factor in such consideration.").

than not based on the consideration of impermissible factors. *Furnco Constr. Corp.*, 438 U.S. at 577.

"In cases involving a RIF where the plaintiff has not been replaced, the fourth element of a prima facie case can be established by evidence that members outside the protected class remained in similar positions after the RIF." *Hall*, 2011 WL 4389701, at *4; *see also Best v. GTE Directories Serv. Corp.*, 1993 WL 13143213, at *4 (N.D. Tex. Mar. 19, 1993) (Fitzwater, J.) ("The discharge coupled with the retention of younger employees creates the presumption of discrimination in a reduction-in-force case." (citing *Thornbrough*, 760 F.2d at 644)).

Whether viewed as a replacement case or a RIF case, it is undisputed that Vega (age 41) was selected over Campbell (age 62) for the position of regional Sales Director and that Campbell's employment was terminated. Because establishing a prima facie case is not onerous, the court holds that Campbell's allegations are sufficient to satisfy the fourth element. *See Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 813 (5th Cir. 1991) (holding that plaintiff established prima facie case of discrimination by producing evidence that, at the time of his dismissal, "younger, allegedly less qualified persons were retained"); *Nichols*, 81 F.3d at 41 (stating that "very minimal" amount of circumstantial evidence is sufficient to make out prima facie case of discrimination). Accordingly, the burden shifts to Zayo to articulate a legitimate, nondiscriminatory reason for terminating Campbell's employment.

V

Zayo must produce evidence of a legitimate, nondiscriminatory reason for terminating Campbell. Zayo has introduced proof that it terminated Campbell's employment as part of a reorganization/RIF. "A RIF is presumptively a legitimate, non-discriminatory reason for a discharge." *Rosenblatt v. 7-Eleven, Inc.*, 2007 WL 2187252, at *6 (N.D. Tex. July 27, 2007) (Fitzwater, J.) (citing *Tucker v. SAS Inst., Inc*., 462 F.Supp.2d 715, 727 (N.D. Tex. 2006) (Fish, C.J.)). Accordingly, Zayo has met its burden of production, and the burden has shifted to Campbell to "'raise a genuine issue of material fact as to whether the employer's proffered reason was merely a pretext for age discrimination.'" *Id.* (quoting *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680 (5th Cir. 2001)).

VI

The court now considers whether Campbell has introduced evidence that would enable a reasonable jury to find that Zayo's proffered legitimate, nondiscriminatory reason for discharging him is pretextual.

A

To establish pretext, Campbell must introduce sufficient evidence for a reasonable jury to find that Zayo's "proffered explanation is false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011) (citation and internal quotation marks omitted). At the summary judgment stage, of course, Campbell need only present sufficient evidence to raise a genuine issue of material fact. *See, e.g., Jackson v. Fed. Express Corp.*, 2006 WL 680471, at *6 (N.D. Tex. Mar. 14, 2006) (Fitzwater, J.) ("Because [defendant] has

satisfied its burden to produce a legitimate, nondiscriminatory reason for [plaintiff's] discharge, in order for [plaintiff] to survive summary judgment, he must create a genuine and material fact issue regarding the ultimate question of discrimination."). But to carry this burden, Campbell "must produce substantial evidence of pretext." *Auguster v. Vermilion Parish Sch. Bd.*, 249 F.3d 400, 402-03 (5th Cir. 2001); *see also id.* at 403 n.3.

B

Campbell first contends that Williams' January 9, 2013 email requesting approval to terminate Campbell explicitly and unambiguously states that Vega's position is being eliminated. He argues that there were not two incumbents for the Sales Director position; rather, he was the only incumbent in the Sales Director position, and his position was not eliminated. Campbell thus posits that, according to the Zayo RIF process, Vega (the non-incumbent) should have been terminated at the first step.

Zayo maintains that neither Campbell's nor Vega's position was being eliminated; "[r]ather, the . . . Director of Strategic Alliances and Director of Texas Sales positions were combined, and changed to form a new go forward regional Sales Director role." D. Br. 12. Zayo produces evidence that when Vega became the regional Sales Director, he continued to perform some of his previous Strategic Alliance duties in addition to the duties of a Sales Director, within an expanded territory. Zayo also relies on evidence that some of the responsibilities that Campbell had previously performed (e.g., supervising sales engineers and customer service representatives) were assigned to others.

Campbell does not dispute these underlying facts; instead, he relies on Williams'

January 9, 2013 email, which states, "[w]e are eliminating the position that [Vega] currently holds, Director, Strategic Alliances and recommend moving [Vega] into the Sales Director role."[8] P. App. 82. Campbell argues that this statement "explicitly and unambiguously states that Vega's position is being eliminated." P. Br. 21. But Williams also clearly states, in the same email, "[w]e are recommending *a consolidation of staff in the Dallas, TX market*." P. App. 82 (emphasis added). And Campbell offers no argument or evidence that would enable a reasonable jury to disbelieve Zayo's evidence that, in fact, the job responsibilities of the new regional Sales Director position included a combination of some of Vega's prior responsibilities and some of Campbell's responsibilities.

Moreover, even if a reasonable jury could find, based on Williams' email, that Zayo was eliminating Vega's position (rather than blending Vega's and Campbell's positions into a single new one), and that Zayo incorrectly applied its RIF Process, "[a]n employer's conscious, unexplained departure from its usual policies and procedures when conducting a RIF may in appropriate circumstances support an inference of age discrimination" only if "the plaintiff establishes some nexus between employment actions and the plaintiff's age."

---

[8]Campbell also points to the following exchange from Howson's deposition:

> Q. Is it a correct statement that it was actually the director of Strategic Alliance position that was eliminated, rather than a sales director?
> A. That's what this says.
> Q. Do you agree with that?
> A. I do.

P. App. 54.

*Rosenblatt*, 2007 WL 2187252, at *9 (quoting *Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 396 (5th Cir. 2002)).

> Proof that an employer did not follow correct or standard procedures in the termination or demotion of an employee may well serve as the basis for a wrongful discharge action under state law. As we have stated, however, the ADEA was not created to redress wrongful discharge simply because the terminated worker was over the age of forty. A discharge may well be unfair or even unlawful and yet not be evidence of age bias under the ADEA. To make out an ADEA claim, the plaintiff must establish the existence of discrete facts that show some nexus between the employment actions taken by the employer and the employee's age. [A] bald assertion that one exists . . . simply will not suffice.

*Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993). As explained below, *see infra* § VI(F), Campbell has failed to adduce *any* evidence, other than his own speculation, that would establish a nexus between his termination and his age.

C

Campbell contends that Zayo should not have treated him and Vega as "peers" for purposes of the RIF because he, a Sales Director, had extensive management experience whereas Vega, an Account Director, did not. Campbell similarly argues that he was clearly better qualified than Vega for the job based on his education, financial acumen, and the fact that he had previously managed other employees.

In a RIF case, a plaintiff can prove pretext by introducing evidence that he "was *clearly* better qualified than younger employees who were retained." *Rosenblatt*, 2007 WL 2187252, at *7 (quoting *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992)

(internal quotation marks omitted); *see also Odom v. Frank*, 3 F.3d 839, 845-46 (5th Cir. 1993) (concluding that factfinder can infer "pretext masking discrimination" if the plaintiff is "*clearly better qualified* for the position in question"). Demonstrating that a candidate is "clearly better qualified" requires the disparities in qualifications to be "'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 357 (5th Cir. 2001) (quoting *Deines v. Tex. Dep't of Protective & Regulatory Servs.*, 164 F.3d 277, 280-81 (5th Cir. 1999)). This stringent requirement, when combined with the summary judgment standard, requires that Campbell adduce evidence that would enable a reasonable jury to find that no reasonable person could have chosen Vega over Campbell. Campbell has not met this burden.

Campbell contends that he was "clearly better qualified" for the Sales Director position because he had an MBA whereas Vega did not have a college degree, "by virtue of his financial acumen,"[9] and because he had previously managed other employees and Vega

---

[9]Regarding his "financial acumen," Campbell offers no evidence, other than his subjective opinion, that would enable a reasonable jury to find that he had a better financial acumen than Vega. Accordingly, this evidence is insufficient to raise a genuine issue of fact regarding whether Campbell was "clearly better qualified" than Vega. *See Choe v. Bank of Am., N.A.*, 2014 WL 2438378, at *3 (N.D. Tex. May 30, 2014) (Fitzwater, C.J.) (holding that summary judgment nonmovants' "conclusory assertion—unsupported by a proper citation to the summary judgment record—[was] insufficient to withstand summary judgment"), *aff'd*, ___ Fed. Appx. ___, 2015 WL 1285280 (5th Cir. Mar. 23, 2015); *see also Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) ("'[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy' the nonmovant's burden in a motion for summary judgment." (quoting *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc))).

had not. P. Br. 22. Campbell fails to explain, however, why the fact that he held an MBA and had previously managed other employees made him “clearly better qualified” for the regional Sales Director position when compared to Vega. Indeed, he points to no job description for the newly-created regional Sales Director position[10] or other evidence that would suggest that having an MBA or prior management experience was a qualification for the position. Moreover, Zayo has adduced undisputed evidence that Vega was only 10 hours short of obtaining a college degree, had over 15 years’ experience in the sales industry at the time of the RIF, and had previously owned and run his own company before selling it to a client. In light of this undisputed evidence, a reasonable jury could not find that no reasonable person could have chosen Vega over Campbell for the regional Sales Director position.

D

Campbell argues that although Zayo now takes the position that performance was not considered, Williams’ January 9, 2013 email refers to Vega’s “equal or superior skills for the role,” P. App. 82, which “sounds like a performance-based comparative judgment and, being false or at least suspicious (like Williams is trying to build a case for what he knows is

---

[10]To the extent Campbell relies on a document entitled “Sales Director” (which appears to be a job posting seeking qualified applicants) as evidence of the job description for the new regional Sales Director position, Campbell has failed to adduce any evidence of the date this document was created or whether the job description contained in the document applied to the newly-created regional Sales Director position. Moreover, Howson testified that Zayo does not have “formal qualifications criteria for [the] sales director position at Zayo,” P. App. 55, and he testified at his deposition that he had not previously seen the “Sales Director” document.

wrong), supplies evidence of mendacity." P. Br. 23. The court disagrees. Williams' email does not refer either to Campbell's or to Vega's "performance" as a consideration relevant to the termination decision. And to the extent Williams' email can be read to suggest that Campbell's and Vega's "qualifications" were considered in connection with the termination decision, Campbell has failed to adduce sufficient evidence to enable a reasonable jury to find that Williams' statement that "[Vega] has equal or superior skills for the role" was a pretext for discrimination. P. App. 82. In other words, Campbell has failed to adduce any evidence that Williams did not actually believe that Vega's qualifications for the regional Sales Director position were equal or superior to Campbell's.

E

Campbell contends that Zayo's reliance on seniority as an objective criterion in the RIF process was contrived because there was only a 21-day difference in seniority, which Campbell characterizes as a "distinction without a difference." P. Br. 23. But Campbell does not dispute that Zayo's RIF Process in fact lists "seniority" as the second criterion to be considered; that, pursuant to the process, where there are two incumbents and one has less seniority than the other, the incumbent with less seniority is to be eliminated[11]; or that Vega had been employed for 21 days longer than Campbell. Although Campbell may view the 21-day difference as insignificant,

---

[11]*See* P. Br. 6 (explaining that "[a]pplication of the process is supposed to be fairly straightforward: If the reduction is accomplished by Step 1, then there is no need to move on to Step 2; if Step 2 is dispositive, then there is no need to move on to Step 3, and so forth.").

> [t]he ADEA was not intended to be a vehicle for judicial second-guessing of employment decisions, nor was it intended to transform the courts into personnel managers. The ADEA cannot protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.

*Rosenblatt*, 2007 WL 2187252, at *11 (quoting *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988)) (internal quotation marks omitted). Here, a reasonable jury could only find that Zayo followed the criteria listed in its RIF Process in retaining Vega and terminating Campbell. The fact that there was only a 21-day difference in seniority is insufficient to support a finding of pretext.[12]

F

In sum, the most Campbell has done is create a weak fact issue as to whether Zayo's proffered reason for his termination—a RIF that resulted in the retention of the more senior employee—was the real reason for his termination. As explained above, "[t]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason is . . . correct.'" *Reeves*, 530 U.S. at 146-47 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 524). In other words, "'[i]t is not enough . . . to *dis*believe

---

[12]Campbell also contends that "Zayo made material misrepresentations to the EEOC, seeking to leave the impression that there was no age discrimination because Zayo followed its RIF procedure when, in fact, it favored a younger employee (Vega) and violated its own RIF procedure to accomplish Campbell's termination." P. Br. 24. Campbell has failed to adduce any evidence, however, that would enable a reasonable jury to find that Zayo made an untrue statement to the EEOC.

the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.'" *Id*. at 147 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 519). Aside from the fact that Campbell was 62 years old when he was terminated, he presents no evidence that would enable a reasonable jury to find that his age, as opposed to some other reason, was the but-for cause of his termination.

Because a reasonable jury could not find that Campbell's age was the but-for cause of his termination, Zayo is entitled to summary judgment dismissing his ADEA claim.

* * *

For the foregoing reasons, the court grants Zayo's motion for summary judgment and dismisses Campbell's action with prejudice by judgment filed today.

**SO ORDERED**.

June 25, 2015.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE